IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| In the Matter of: | ) | |
| | ) | Case No. 18-03763-DSC13 |
| Kamecia Thomas, | ) | |
| Debtor. | ) | Chapter 13 |
| | ) | |

| | | |
|---|---|---|
| Kamecia Thomas, | ) | |
| Plaintiff, | ) | A.P. No. 22-00041-DSC |
| | ) | |
| v. | ) | |
| | ) | |
| NewRez, LLC, | ) | |
| Defendant. | ) | |

<u>MEMORANDUM OPINION</u>

This opinion serves as the Bankruptcy Court's decision about the contentious, long-running dispute between the Plaintiff, Kamecia Thomas, and the Defendant, NewRez, LLC, which is the current servicer of Plaintiff's residential mortgage account. The Court finds that some relief for the Plaintiff is appropriate, and the basis for the Court's decision follows.

**Jurisdiction**

The Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the General Order of Reference entered and amended by the United States District Court for the Northern District of Alabama. This is a core proceeding under 28 U.S.C. § 157(b)(2)(B), (K), and (O), and the Court has the authority to enter final orders and judgment in this matter.

**Trial Proceeding**

The Court began a trial of Plaintiff's Complaint and Defendant's Answer on October 22, 2025. Appearing at trial were Plaintiff Kamecia Thomas ("Thomas"), with her aunt, Gwendolyn McGhee; Defendant NewRez, LLC, d/b/a Shellpoint Mortgage Servicing ("NRZ") and its counsel,

Glenn E. Glover; and Bradford W. Caraway, Chapter 13 Standing Trustee, with his staff attorney, Mary Frances Fallaw. Testimony and arguments ensued for 12 days, with Thomas introducing more than 1,716 pages of documents[1] and NRZ introducing 48 exhibits.

**Findings of Fact[2]**

Thomas bought the home located at 807 Center Street, Bessemer, Alabama 35020 (the "Residence"), for $115,000 on June 1, 2006. (P. Ex. 1, p. 307.) To finance the cost of the Residence, Thomas signed a 30-year, adjustable rate, promissory note for $92,000 (P. Ex. 1, pp. 378-380) and a mortgage in favor of Decision One Mortgage Company, LLC (the "Mortgage"). (P. Ex. 1, pp. 381-395; D. Ex. 2.)

Thomas filed a chapter 13 bankruptcy petition 18 years ago and quickly converted it to chapter 7 on December 19, 2007. (Case No. 07-04675-TBB7.)[3] She listed the mortgage debt for the Residence, which is the subject of this adversary proceeding, on Schedule D of her petition under the name of a previous mortgage servicer, HSBC Mortgage Corporation ("HSBC"). (BK7 Doc. 1.) Thomas obtained a chapter 7 discharge on May 6, 2008. (BK7 Doc. 83.) Although she reaffirmed a debt for personal property with Standard Furniture Company during her chapter 7 case, she did not file a reaffirmation agreement for her residential mortgage with HSBC.

---

[1] Disputes about discovery and the exchange of documents developed between the parties several months before trial and persisted until the end of trial, with Thomas alleging that NRZ altered documents or withheld documents from her. The Court received little evidence for this contention and finds that neither NRZ nor its counsel has violated Bankruptcy Rule 7026 in this case. Regarding the documents offered by Thomas and admitted as evidence in support of her testimony during trial, the Court hereby certifies that, since the end of trial on November 7, 2025 (AP Doc. 122), all her documents have been stored securely in a locked conference room to which only the undersigned has access. Upon entry of this memorandum opinion, the trial exhibits will be released to the custody and control of the Clerk of Court for secure storage until all appeals, if any, are exhausted.

[2] Pursuant to Rule 201 of the Federal Rules of Evidence, the Court may take judicial notice of the contents of its own files, and the Court does so in this case. *See IT Rayonier, Inc. v. U.S.*, 651 F.2d 343 (5th Cir. Unit B July 1981); *Florida v. Charley Toppino & Sons, Inc.*, 514 F.2d 700, 704 (5th Cir. 1975).

[3] Documents from this chapter 7 case will be cited as "BK7 Doc...."

A few years later, following the death of her father, Thomas ran into difficulties which caused her income to drop significantly and ultimately led to a loan modification agreement in 2010 with her mortgage servicer at the time, Specialized Loan Servicing, LLC. (D. Ex. 4.) Under this loan modification, the mortgage servicer wrote off (or waived) $5,707.35 in late payments and deferred $4,442.41 in late payments to the end of the 30-year loan term. *Id*. Thereafter, Thomas experienced a multitude of extreme personal troubles including job losses, car wrecks, the deaths of numerous family members, issues with her children's school, and legal problems with the City of Bessemer, Alabama. These hardships resulted in a second loan modification agreement in 2012, under which the mortgage servicer wrote off (or waived) $27,662.63 in late payments and deferred $2,444.08 in late payments to the end of the loan term. (D. Ex. 5.) This modification set the annual interest at a fixed rate of 5% and extended the loan term to June 1, 2042. *Id*.

According to Thomas's documents, her mortgage account was transferred often during its first decade to numerous mortgage servicers including HSBC, Mortgage Electronic Registration Systems, Fay Servicing, Specialized Loan Servicing, Rushmore Loan Management Servicers, and New Penn Financial. Then, on March 1, 2016, Thomas's mortgage account was transferred to NRZ. (D. Ex. 3.)

Within days of taking over the servicing of Thomas's mortgage account in March 2016, NRZ issued a monthly mortgage statement indicating a principal balance of $54,935.41 and a default of $825.40. (D. Ex. 46, p. 66.) According to NRZ's internal servicer comments, Thomas began disputing this default in May 2016. (P. Ex. 2, pp. 1871-72.) NRZ issued another notice of default in the amount of $991.10 soon thereafter. (P. Ex. 1, pp. 66-67.)

According to NRZ's internal servicer comments, Thomas made a mortgage payment of $829.30 on or about July 15, 2016. (P. Ex. 2, p. 1865.) However, NRZ acknowledged internally on

3

August 26, 2016, that this payment was "returned in error due to system issues." (P. Ex. 2, p. 1862.) Oddly, NRZ's Loan History Summary includes nothing about a payment received, or returned, on either July 15 or August 26, 2016. (D. Ex. 46, p. 62.) Although NRZ's internal servicer comments from September 2016 recognized that a payment had been returned in error, two different servicer representatives maintained nonetheless that Thomas's account was delinquent on September 15, 2016, without recognizing that a servicer error had caused at least part of the delinquency. (P. Ex. 2, pp. 1859-1862.)

Although NRZ offered a third loan modification to Thomas in 2017 (P. Ex. 2, p. 1842), she never signed the agreement based in part on her continuing dispute over the arrearage and her questions about the deferred amount proposed under the new loan modification. (P. Ex. 2, pp. 1076-1080, P. Ex. 2, p. 1826.)

By May 2018, NRZ's records reflected a principal balance of $53,247.70 and a default of $5,345.82. (P. Ex. 2, p. 439.) NRZ's mortgage statement for September 2018 reflected the same principal balance of $53,247.70, and a higher default of $6,762.08. (AP Doc. 1, p. 12.) Thomas filed her chapter 13 bankruptcy petition on September 13, 2018 (Case No. 18-03763-DSC13),[4] and listed NRZ as a secured creditor on Schedule D with a claim of $53,247.70. (BK13 Doc. 1, p. 18.) In her chapter 13 plan, Thomas proposed to cure NRZ's prepetition mortgage arrearage of $7,980 with periodic (fixed) payments of $165.33 monthly through the chapter 13 trustee. (BK13 Doc. 2, p. 2.) Thomas further proposed in her plan to resume her ongoing mortgage payments of $430.32 monthly directly from her to NRZ beginning November 1, 2018. *Id*. NRZ filed its secured Proof of Claim No. 13-1 on November 21, 2018, in the amount of $66,483.90. This claim included prepetition arrearage of $8,448.55. NRZ amended its proof of claim twice, Claim Nos. 13-2 and

---

[4] Documents from this chapter 13 case will be cited as "BK13 Doc...."

4

13-3, although these amendments did not change the total amount of the claim or the prepetition arrearage (hereinafter, "Amended Claim No. 13-3"). (D. Ex. 6.) In response, Thomas amended her chapter 13 plan to match the principal amount and the arrearage listed in NRZ's proof of claim and amendments. (BK13 Doc. 30, p. 2.) Under the amended plan, Thomas again proposed to maintain direct payment of the ongoing, monthly mortgage payments from her to NRZ. *Id*. This Court confirmed the Debtor's amended plan and entered a Confirmation Order on January 28, 2019. (BK13 Doc. 34.)

NRZ filed a Notice of Postpetition Mortgage Fees, Expenses, and Charges in the amount of $65 for BPO fees on March 13, 2019 ("Fee Notice"). (BK13 Claims Register No. 13, March 13, 2019.) This was the only Fee Notice filed by NRZ during Thomas's chapter 13 case. Based on an alleged default of $1,188.15 in postpetition mortgage payments (3 months plus fees and costs), NRZ moved for relief from the automatic stay on July 15, 2019, for permission to pursue its contractual remedies in state court (the "Motion for Relief"). (D. Ex. 10.) NRZ also filed a Fact Summary in support of its Motion for Relief. (BK13 Doc. 38.) After a hearing, this Court entered an Order conditionally denying NRZ's Motion for Relief on September 5, 2019, that required Thomas to resume her mortgage payments directly from her to NRZ with the September 2019 payment. (D. Ex. 11.) This Order also authorized NRZ to file an additional proof of claim for the postpetition arrearage through August 2019, to be paid through the chapter 13 trustee as part of Thomas's confirmed chapter 13 plan. *Id*. NRZ filed secured Claim No. 16 on September 6, 2019, for $3,345.04 (D. Ex. 12), as well as another Payment Change Notice three days later. (BK13 Claim No. 13, September 9, 2019.)

Thomas filed an objection to Claim No. 16 on April 14, 2020 (D. Ex. 13), which this Court sustained after a hearing, thereby reducing Claim No. 16 to $2,451.87. (D. Ex. 14.) Thereafter,

NRZ filed two more Payment Change Notices. (D. Exs. 15, 16.) In response to the Payment Change Notice filed June 8, 2022, Thomas filed a Motion to Determine Validity of Mortgage Payment Change (BK13 doc. 109) wherein she objected to the increase in her monthly escrow payments based on NRZ's failure to run an escrow analysis in 2021. She further requested waiver of any escrow shortage. *Id*. About two months later, NRZ mailed Thomas a mortgage statement for August 2022 which claimed a principal balance of $47,317.38, a default of $610.90, and prepetition arrearage of $3,654.44. (AP Doc. 1, pp. 14-15.) This mortgage statement included the following bankruptcy disclaimer: "Our records show that you are a debtor in bankruptcy. We are sending this statement to you for informational and compliance purposes only. It is not an attempt to collect a debt against you."[5] *Id*. About one month later, Thomas filed this adversary proceeding against NRZ (Adversary Proceeding No. 22-00041-DSC).[6] (AP Doc. 1.) Her complaint made the following claims:

a. The principal balance, accrued interest, and deferred balance of her mortgage loan was overstated on the September 2018 monthly statement and in Claim No. 13. (AP Doc. 1, p. 2, ¶ 9; p. 3, ¶ 13, 16; p. 4, ¶ 17.)

b. Although the Payment Change Notice filed June 8, 2022, increased the escrow payment to $235.85 monthly, Thomas filed an objection to it, rendering this change ineffective and leaving the escrow payment at $110.97 monthly. (AP Doc. 1, p. 4, ¶ 24.)

c. The August 2022 monthly statement included unauthorized fees and charges, and reflected misapplied mortgage payments which resulted in inaccurate amounts for principal, interest, and delinquency. (AP Doc. 1, p. 4-6, ¶ 26-34.)

---

[5] NRZ had added a bankruptcy disclaimer to its monthly mortgage statements by December 2018 and perhaps earlier, but not all mortgage statements were offered as evidence or made part of the record.

[6] Documents from this adversary proceeding will be cited as "AP Doc…."

6

d. NRZ failed to perform an escrow analysis for 2021. (AP Doc. 1, p. 6, ¶ 40.)

e. These actions violated Federal Rule of Bankruptcy Procedure 3002.1(c). (AP Doc. 1, p. 8, ¶ 48-54.)

Based on these claims, Thomas asks this Court to hold NRZ in contempt; award sanctions to her in the form of actual damages, punitive damages, costs, and attorney's fees; waive any deficiency/shortage due from Thomas on this mortgage loan; disallow the balance of Amended Claim No. 13-3; and disallow the balance of Claim No. 16.

When the complaint was filed, attorney Robert C. Keller ("Keller") represented Thomas. However, based on a deterioration of the attorney-client relationship during the course of the representation, this Court granted Keller's motion to withdraw (AP Doc. 37, BK13 Doc. 198) under Rule 1.16(a)(1) and (b)(1)-(6) of the Alabama Rules of Professional Conduct and entered an Order on August 28, 2024. (AP Doc. 46, BK13 Doc. 213.) During the hearing on Keller's motion to withdraw, Thomas seemed to vacillate between strenuously opposing, and then supporting, Keller's withdrawal. During trial, however, she steadfastly maintained that his withdrawal prevented her from adequately preparing her case against NRZ.

Katisha Gill ("Gill") testified at trial as a litigation case manager and corporate representative for NRZ. Pursuant to her testimony, NRZ's business records asserted the following default in mortgage payments by Thomas-

| Exhibit No. | Dates | Payments Due | Payments Made | Default |
|---|---|---|---|---|
| D. Ex. 133 | Feb. 2016-Sept. 2018 | 14,410.88 | 8,079.68 | (6,331.20) |
| D. Ex. 128 | Oct. 2018-July 2019 | 4,304.20 | 3,282.00 | (1,022.20) |

| D. Ex. ___[7] | Aug. 2025 | 2019-Oct. | 41,747.68 | 18,327.17 | (23,420.51) |
| **Total** | **Feb. 2025** | **2016-Oct.** | **60,462.76** | **29,688.85** | **(30,773.91)** |

In addition, Gill testified that NRZ incurred and advanced fees and charges totaling $7,423.67 to service Thomas's mortgage account, and they remain unpaid. (P. Ex. 1, pp. 298-306.) Of these corporate advances, $5,016.03 were assessed against Thomas's account postpetition. *Id*. Gill also testified that, during the term of Thomas's chapter 13 plan, NRZ received some payments from the chapter 13 trustee that were applied to the prepetition arrearage consistent with the confirmed plan and the postpetition arrearage under the Order conditionally denying stay relief. (D. Ex. 11.) Although Thomas disputed this testimony, she offered no proof about the alleged misapplication of trustee payments.

According to testimony and the NRZ loan payoff statement admitted as evidence, the payoff amount for Thomas's residential mortgage loan was $64,302.12 on July 17, 2018, plus per diem interest of $7.11. (D. Ex. 22.)[8] At the conclusion of the trial on November 7, 2025, this Court took the matter under submission to prepare its ruling. Shortly thereafter, Thomas filed an Emergency Motion in her chapter 13 case and this adversary proceeding seeking various forms of relief. (BK13 Doc. 242; AP Doc. 123.) Based on the evidence and arguments presented during the hearing on November 19, 2025, this Court entered an Order that granted a hardship discharge to

---

[7] Gill testified on November 6, 2025, about Defense Exhibit 130 and the default in mortgage payments between August 2019 and October 2025. Although Exhibit 130 was not offered or admitted as evidence, Gill established a payment default of $23,420.51 for this time period.

[8] The July 17, 2018, payoff letter was the only evidence admitted by either party concerning the amount needed to satisfy Thomas's mortgage debt to NRZ. Without more recent payoff information, this Court is left with the difficult task of determining, to the best of its ability, the amounts necessary to set the obligations of the parties and to adjudicate this case.

8

Thomas under 11 U.S.C. § 1328(b), which is subject to her completion of several certifications required by the Bankruptcy Code. (BK13 Docs. 245, 249, 249-2.)

**Discussion and Conclusions of Law**

Throughout this Memorandum Opinion, to the extent any findings of fact stated above also constitute conclusions of law, or these conclusions of law also contain findings of fact, they shall be construed to be both findings of fact and conclusions of law.

**A.    Review of the Complaint**

Thomas was not a pro se litigant when she filed this adversary proceeding, but she has handled this case by herself since Keller withdrew from representation under this Court's Order of August 28, 2024. (AP Doc. 46.) The Court acknowledges that the Complaint was filed by former counsel, and in light of Thomas's pro se status, "the Court will afford some leniency to [Thomas] as a pro se litigant and construe her submissions as raising the strongest arguments suggested." *In re Ditech Holding Corp.*, No. 19-10412 (JLG), 2024 WL 4356382, at *5 (Bankr. S.D.N.Y. Sept. 30, 2024) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)); *In re Smith*, 489 B.R. 875 (Bankr. M.D. Ga. 2013).

The Court has liberally construed Thomas's Complaint with the deference due a pro se litigant. *Crabtree v. Thibodeaux*, No. 6:22-CV-00437-JCB, 2022 WL 18216077, at *2 (E.D. Tex. Dec. 21, 2022), report and recommendation adopted, No. 6:22-CV-00437, 2023 WL 149992 (E.D. Tex. Jan. 10, 2023); *see Erickson*, 551 U.S. 89 at 94 (Pro se pleadings are "to be liberally construed," and "a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.").

Throughout the trial, counsel for NRZ objected to admission of the exhibits offered by Thomas in support of her trial testimony. Based on her status as a pro se litigant, the Court affords

some leniency to Thomas regarding her exhibits, and will overrule NRZ's objection on this ground.[9]

Despite this leniency and liberal construction, the Court finds that most counts of the Complaint are vague and difficult to quantify under the Bankruptcy Code and Rules. However, Thomas has proved other counts of her Complaint, and some relief is warranted.

## B.  Count 1—Breach of Contract

The breach of contract allegations against NRZ, as described in Count 1 of the Complaint (AP Doc. 1, ¶ 39), are best summarized to include the following: that NRZ breached the loan terms by assessing and applying unauthorized fees and charges to Thomas's mortgage account; by misapplying mortgage payments and causing inaccurate principal, interest, and delinquency amounts; and by failing to perform an annual escrow analysis for 2021, which is a RESPA violation.[10]

The elements for breach of contract under Alabama law include: "(1) a valid contract binding the parties; (2) the plaintiffs' performance under the contract; (3) the defendant's nonperformance; and (4) resulting damages." *In re Sharpe*, 391 B.R. 117, 150 (Bankr. N.D. Ala. 2008) (citing *Reynolds Metals Co. v. Hill,* 825 So.2d 100, 105–06 (Ala.2002)); *State Farm Fire & Cas. Co. v. Slade,* 747 So.2d 293, 303 (Ala.1999). Thomas bears the burden to prove each element

---

[9] In affording Thomas leniency due to her pro se status, the Court allowed her to offer three large batches of documents as trial exhibits, namely, Plaintiff's Exhibit 1, Plaintiff's Exhibit 2, and Plaintiff's Exhibit 3. The individual documents contained in Plaintiff's Exhibits 1, 2, and 3 were not separately identified by exhibit number or otherwise. Consequently, the undersigned hand-counted the pages in each exhibit and referenced the exhibit according to those page numbers when cited within this opinion. Those exhibits, along with the defense exhibits and court documents that are cited in this opinion, are compiled in the attached Appendix for reference. Based on the large number of documents, the Appendix is divided into 3 parts. The undersigned has noted, by hand, the corresponding exhibit numbers on the documents included in the Appendix.

[10] The Real Estate Settlement Procedures Act found at 12 U.S.C. § 2609(a)-(c); 12 C.F.R. §§ 1024.17(c), 1024.17(f)(5), and 1024.17(i). *See* Complaint, ¶¶ 40-42.

by a preponderance of the evidence. *See Crop Prod. Servs., Inc. v. Layton*, No. 1:09-CV-401-WKW, 2010 WL 11519450, at *9 (M.D. Ala. June 1, 2010), aff'd, 442 F. App'x 514 (11th Cir. 2011); *see also Beauchamp v. Coastal Boat Storage, LLC*, 4 So. 3d 443, 449-50 (Ala. 2008) (under Alabama law, preponderance of the evidence is plaintiff's burden of proof in a breach of contract claim); *Rozell v. Childers*, 888 So. 2d 1244, 1248 (Ala. Civ. App. 2004) (same in the context of a debt).

The Court finds that a valid mortgage contract exists between Thomas and NRZ, but Thomas has not met her burden of proving that she, as Plaintiff, has performed as required under that mortgage contract. According to NRZ's internal servicer comments, Thomas's account was already in default in March 2016 when NRZ began servicing her mortgage loan. (P. Ex. 2, p. 1874; D. Ex. 133.) Thereafter, Thomas made mortgage payments in July and August 2016, but her mortgage account was delinquent nonetheless in September 2016. It is unclear whether NRZ caused this delinquency when a payment was "returned in error due to system issues" in August 2016, or for some other reason. (P. Ex. 2, p. 1862.) According to a mortgage statement issued 2 years later, Thomas still owed $6,762.08 in overdue payments on August 20, 2018. Consequently, the evidence from NRZ indicates that Thomas's mortgage payments were delinquent leading up to the filing date of her chapter 13 bankruptcy case in September 2018, and she remained in default thereafter. Based on this Court's review of the evidence, NRZ last received a full, timely mortgage payment ($557.94) from Thomas on December 14, 2022. (D. Ex. 46, p. 26.) Thomas contends, however, that servicer errors created these problems, and the amount of her default is much smaller than the amount shown in NRZ's records.

Thomas supports her breach of contract claim with arguments about the misapplication of mortgage payments, escrow analysis failure, and unauthorized charges. However, Thomas's

11

"contention misses a critical element of her claim for breach of contract, her own performance." *Bias v. Cenlar Agency, Inc.*, No. 2:15-CV-00768-SGC, 2018 WL 2365428, at *5 (N.D. Ala. May 24, 2018). Although Thomas provided a large number of payment photocopies as evidence of mortgage payments made, she did not prove that she made *every* mortgage payment to NRZ on time, and she admitted that she had missed at least *some* mortgage payments. "When a plaintiff fails to allege that [she] has performed under the contract, [she] cannot maintain a breach of contract claim." *Washburn v. Brown*, No. 2:23-CV-00591-RDP, 2024 WL 3170527, at *6 (N.D. Ala. June 25, 2024). *See Fed. Home Loan Mortg. Corp. v. Capps*, 2019 WL 1028008, at *8 (N.D. Ala. Mar. 4, 2019) (citing *Bias v. Cenlar Agency, Inc.*, 2018 WL 2365428, at *5 (N.D. Ala. May 24, 2018) (dismissing breach of contract claim because of borrower's admitted nonperformance) and *Tidmore v. Citizens Bank & Tr.*, 250 So. 3d 577, 590 (Ala. Civ. App. 2017) (borrower "cannot establish his own performance under the mortgage contract, and, therefore, he failed to present evidence of an essential element of his breach-of-contract [ ]claim")).

The evidence shows that Thomas fell behind on her mortgage payments at various times before and after filing her chapter 13 bankruptcy case. Even if the Court accepts Thomas's testimony that she is not $30,773.91 behind as alleged by NRZ, there is ample evidence showing a substantial default in payments since 2018 when Thomas filed her chapter 13 bankruptcy case. "While there may be specific situations in which a party's nonperformance does not defeat his or her breach of contract claim," this Court is not persuaded that the facts and circumstances of this case justify such a holding here. *Fed. Home Loan Mortg. Corp. v. Capps*, 2019 WL 1028008, at *8. As such, Thomas cannot maintain her breach of contract claim against NRZ.

The Court will briefly address the RESPA violations alleged in Count 1 of the Complaint, which are based on NRZ's failure to perform an escrow analysis on Thomas's loan for 2021.

12

Thomas cites to the RESPA provisions, 12 U.S.C. §§ 2609(a), 2609(b), and 2609(c) as applicable to her case. However, no private right of action exists under 12 U.S.C. § 2609 for such a violation. "Under § 10, no private right of action exists because "the Secretary shall assess to the lender or escrow servicer failing to submit the statement a civil penalty."" *Hardy v. Regions Mortg., Inc.*, 449 F.3d 1357, 1359 (11th Cir. 2006); *In re Salvador*, 456 B.R. 610, 624 (Bankr. M.D. Ga. 2011); 12 U.S.C. § 2609(d)(1). Failure to comply with regulation … is a violation of RESPA § 10, and RESPA explicitly states that the Secretary of Housing and Urban Development ("HUD") enforces violations of § 10. *Hardy v. Regions Mortg., Inc.*, 449 F.3d 1357 at 1360. The regulations also provide that "the Secretary shall assess" the penalties. *Id.* "The express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others." *Id.* (citing *Alexander v. Sandoval,* 532 U.S. 275, 290, 121 S.Ct. 1511, 1521–22, 149 L.Ed.2d 517 (2001)).

Because no private right of action exists under RESPA for a mortgage servicer's failure to perform an escrow analysis, damages are not available to Thomas for this particular claim against NRZ. Further, the decision to assess penalties against NRZ is left, by statute, to the HUD Secretary. Accordingly, Thomas's damage claim for RESPA violations related to the 2021 missing escrow analysis must fail.

## C. Count 2—Violation of the Automatic Stay

Section 362(a) of the Bankruptcy Code provides, in applicable part, that the filing of a bankruptcy petition operates automatically as a stay of

> (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under [title 11], or to recover a claim against the debtor that arose before the commencement of the case under [title 11];
> (2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under [title 11];

13

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

(4) any act to create, perfect, or enforce any lien against property of the estate;

(5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under [title 11]; [and]

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under [title 11]....

*In re Morris*, 514 B.R. 658, 666 (Bankr. N.D. Ala. 2014); 11 U.S.C. § 362(a).

Under Bankruptcy Code § 362(k), "[a]n individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k). For an award of damages under this statute, Thomas bears the burden of proving that there was, in fact, a stay violation, *and* that the violation was willful. *In re Morris*, 514 B.R. 658 at 666. A stay violation is willful if [the] Defendant[] "(1) knew the automatic stay was invoked and (2) intended the actions which violated the stay." *In re Sciortino*, 561 B.R. 260, 264 (Bankr. N.D. Ga. 2016) (citing *Jove Engineering, Inc. v. I.R.S.*, 92 F.3d 1539, 1555 (11th Cir. 1996)).

In Count 2 of the Complaint, Thomas asserts that NRZ violated the automatic stay provisions of 11 U.S.C. § 362(a). (AP Doc. 1, ¶ 45.) In support of this contention, Thomas claims that "the actions of [NRZ] as set out herein constitute gross and willful violations of the automatic stay." (AP Doc. 1, ¶ 46.) However, the allegations in Count 2 lack specific facts showing a stay violation by NRZ. As with the breach of contract claim, the Court is left to sort through the Complaint to identify factual segments that might indicate a stay violation, if any. Further, the Complaint does not allege which element of § 362(a) has been violated, and the testimony at trial provided no additional clarity here.

Thomas contends that the mortgage statement dated July 18, 2022, reflected an inaccurate principal balance, and that trustee payments had not been applied properly to the prepetition

14

mortgage arrearage. (AP Doc. 1, ¶¶ 27-34.) Further, Thomas testified at trial that NRZ violated §

362(a) by filing its Motion for Relief with this Court. Thomas construes this Motion as an

impermissible attempt to foreclose on her home while she was under bankruptcy protection.

Accordingly, the Court must evaluate the plain language of the statute to determine whether

NRZ's actions violated the automatic stay. *In re Rodriguez*, 421 B.R. 356, 367 (Bankr. S.D. Tex.

2009) (citing *United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 242, 109 S.Ct. 1026, 103

L.Ed.2d 290 (1989)) ("The plain meaning of legislation should be conclusive, except in the rare

cases in which the literal application of a statute will produce a result demonstrably at odds with

the intention of its drafters.").

This Court acknowledges that, in Thomas's Complaint, she disputed the mortgage

delinquency that served as the basis for NRZ's Motion for Relief, just as she has done consistently

since NRZ began servicing her loan in 2016. During trial, Thomas continued to dispute nearly all

the mortgage defaults claimed by NRZ, and she vigorously asserted that the delinquency amounts

in the monthly statements were inaccurate, confusing, and led her to believe that NRZ was

erroneously servicing her mortgage account. However, displaying charges and payment defaults—

even inaccurate ones—on monthly billing statements and online records may not violate the

automatic stay where adequate bankruptcy disclaimers are given. According to the evidence

presented, NRZ included a bankruptcy disclaimer on most, but not all, of its monthly mortgage

statements after Thomas filed her chapter 13 case. Per the "Bankruptcy Messages" box on the first

page of the July 18, 2022 mortgage statement, and on other postpetition mortgage statements, the

disclaimer reads:

**"Our records show that you are in bankruptcy. We are sending this statement to you for informational and compliance purposes only. It is not an attempt to collect a debt against you."**

In response to Thomas's allegation, NRZ relies on the Eleventh Circuit's *Roth* decision, which held that a mortgage company sending informational statements containing prominent disclaimers did not violate the discharge injunction. *In re Roth*, 935 F.3d 1270 (11th Cir. 2019). This Court finds that the monthly mortgage statements issued postpetition by NRZ that *included* a bankruptcy disclaimer met the standard outlined in *Roth* to avoid liability for stay violations.[11] Those mortgage statements are informational based on the conspicuous disclaimers. The fact that these statements included amounts due, due dates, and statements about negative escrow balances, does not diminish the effect of a prominent, clear, and broadly worded disclaimer. *In re Roth*, 935 F.3d 1270 at 1276.

However, NRZ issued two postpetition mortgage statements to Thomas for the months of December 2020 and January 2021 that listed arrearage amounts *without* including a bankruptcy disclaimer. (P. Ex. 2, pp. 1 et seq.) While the *Roth* decision provides no safe harbor for issuing these mortgage statements, Thomas has provided no evidence to show that NRZ's omission of the bankruptcy disclaimers from these two mortgage statements was willful, or that NRZ intended to collect the listed arrearages directly from Thomas without this Court's permission. *In re Sciortino*, 561 B.R. at 264 (Bankr. N.D. Ga. 2016). In addition, Local Rule 4072-1 for the United States

---

[11] "Accordingly, we first determine whether a communication is a prohibited debt collection under section 524 by looking to "whether the objective effect of the creditor's action is to pressure a debtor to repay a discharged debt." *In re McLean*, 794 F.3d 1313, 1322 (11th Cir. 2015). If so, we then evaluate whether that violation of the discharge injunction is sanctionable under section 105, by determining if "there is *no fair ground of doubt* as to whether the order barred the creditor's conduct."" *In re Roth*, 935 F.3d 1270, 1276 (11th Cir. 2019).

16

Bankruptcy Court for the Northern District of Alabama provides that a secured creditor in a chapter 13 case, without leave of court, may "[m]ake reasonable contact with the debtor as to payments that a proposed or a confirmed plan provides are to be paid directly to the creditors by the debtor, including the issuance of monthly bills, statements for post-petition payments, and a written notice of a post-petition delinquency…."

With regard to Thomas's contention about the misapplication of payments disbursed by the chapter 13 trustee, this Court is satisfied by NRZ's records and the testimony of its witness, Gill, that it received all payments disbursed by the chapter 13 trustee and applied them properly, giving credit for the prepetition and postpetition arrearages allowed under NRZ's two proofs of claim in Thomas's chapter 13 case. As a result, the Court finds no basis for a stay violation regarding this allegation.

As to Thomas's stay violation claim about the filing of NRZ's Motion for Relief (D. Ex. 10), the Court rejects Thomas's argument that the Motion for Relief violated the automatic stay during her chapter 13 case. The plan confirmed by this Court in January 2019 required Thomas to make her ongoing mortgage payments to NRZ each month. Thomas did not provide sufficient evidence during the hearing then, or at trial now, to prove that she was current on her monthly mortgage payments when NRZ filed its Motion for Relief in July 2019. When debtors in bankruptcy default on direct mortgage payments, it is common for creditors to move for relief from the automatic stay to pursue their contractual remedies under state law outside the bankruptcy court, just as NRZ did. Such action is authorized under the Bankruptcy Code and occurs frequently in chapter 13 cases. To the extent that Thomas believed that NRZ's Motion for Relief was either frivolous or presented for an improper purpose when filed, she could have addressed it six years ago, under Rule 9011 of the Federal Rules of Bankruptcy Procedure, before this Court entered the Order that conditionally

17

denied the Motion. (D. Ex. 11.) At this point, any such claim by Thomas is untimely and is barred under the legal theories of res judicata and laches.

In summary, Thomas has not provided sufficient evidence to prove that NRZ's conduct constituted a willful violation of the automatic stay in her chapter 13 case under any of the subsections contained in Bankruptcy Code § 362(a), and the Court declines to award damages under this count of the Complaint. While the Court does acknowledge the extreme stress and frustration experienced by Thomas for many years about her mortgage account, she simply has not met the elements required by Bankruptcy Code § 362(k) to establish damages for a willful stay violation by NRZ.

## D. Count 3—Violation of Bankruptcy Rule 3002.1

"A bankruptcy court has statutory authority to 'issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of' the Bankruptcy Code. 11 U.S.C. § 105(a). And it may also possess 'inherent power…to sanction abusive litigation practices.'" *Law v. Siegel*, 571 U.S. 415, 420 (2014) (quoting *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 375-376, (2007)). This Bankruptcy Court views its statutory and inherent powers to sanction civil contempt narrowly. Based on the record in this case, the Court does not view the actions of NRZ as "improper conduct" or "abuses of the bankruptcy process" that warrant the imposition of sanctions against it for civil contempt. *In re Dewitt*, 651 B.R. 215, 235 (Bankr. S.D. Ohio 2023). Along this line, the undersigned agrees that Bankruptcy Rule 3002.1 confers no private right of action to Thomas for violations of its provisions by a mortgage servicer like NRZ. Additionally, Rule 3002.1(i)(2) does not authorize this Court to award actual or compensatory damages to Thomas for her losses. *In re Dewitt*, 651 B.R. at 230-231 (Bankr. S.D. Ohio 2023). But the analysis does not end here in determining appropriate relief.

18

Count 3 of Thomas's Complaint alleges that NRZ "has assessed, charged, dunned, and collected fees and charges" against Thomas which, in violation of Federal Rule of Bankruptcy Procedure 3002.1 ("Rule 3002.1"), were not disclosed. (AP Doc. 1 at 52.) Rule 3002.1 requires a creditor like NRZ, whose claim is secured by a security interest in the debtor's principal residence, to file (within 180 days of the fees being incurred) a notice of all postpetition fees, expenses, or charges that are incurred in connection with the mortgage claim and are asserted as recoverable against the debtor or the debtor's principal residence. *See* Fed. R. Bankr. P. 3002.1(c). Thomas alleges that NRZ violated this Rule and assessed fees and charges against her mortgage account that were never disclosed. And in violating Rule 3002.1, NRZ not only contravened required procedure but also contributed to Thomas's overall inability to understand what was going on with her mortgage; at least, that is how this Court views the bottom line to Thomas's claims. To that end, the driving force behind the enactment of Rule 3002.1 is particularly relevant here.

The *Dewitt* decision surmises the intention behind Rule 3002.1 as follows:

Rule 3002.1 was implemented in response to widespread challenges faced by debtors and Chapter 13 trustees in obtaining accurate information from mortgagees and mortgage servicers. See *In re Gordon*, No. 10-13885 EEB, 2011 Bankr. LEXIS 3848, at *9 (Bankr. D. Colo. Mar. 25, 2011) (noting that debtors sometimes struggle to ascertain the amount of a mortgage arrearage because "the mortgage holder ... fails to adequately communicate with the debtor"); see also *Harker v. Wells Fargo Bank, NA (In re Krause)*, 414 B.R. 243, 251 (Bankr. S.D. Ohio 2009) (stating that "growth over the last decade of the secondary mortgage market ... has engendered numerous problems in bankruptcy courts ... related to the documentation of motions for relief from stays, proofs of claim, and foreclosure actions filed by the banking and mortgage industry"). Mortgage servicers often misapplied plan payments, added undisclosed fees to the debtor's loan balance, or recalculated escrow payments without advance notice, among other actions. See *In re Pillow*, No. DK 11-11688, 2013 Bankr. LEXIS 5711, at *6, 2013 WL 10252924, at *2 (Bankr. W.D. Mich. Mar. 18, 2013) (describing the types of undisclosed charges that mortgage servicers frequently added to mortgage loan balances prior to the implementation of Rule 3002.1); see also *Ameriquest Mortg. Co. v. Nosek (In re Nosek)*, 609 F.3d 6, 9 (1st Cir. 2010) (citing Katherine Porter, *Misbehavior and Mistake in Bankruptcy Mortgage Claims*, 87 Tex. L. Rev. 121, 123-24 (2008)) ("Studies have shown that mortgage holders and servicers routinely file inaccurate claims, some

19

of which may not be lawful."). These failures frequently meant that debtors completed the rigorous Chapter 13 requirements to obtain a discharge and reinstate their home mortgage only to emerge from bankruptcy and find themselves immediately facing foreclosure once again. (citations omitted).

651 B.R. at 222–23. Thus, Rule 3002.1 recognizes that "a debtor and the trustee have to be informed of the exact amount needed to cure any prepetition arrearage, *see* Rule 3001(c)(2), and the amount of the postpetition payment obligations" in order for "a chapter 13 debtor to cure a default and maintain payments on a home mortgage over the course of the debtor's plan" as is authorized under the Bankruptcy Code. *See* 11 U.S.C. §1322(b)(5) advisory committee's note. And if, as alleged here, the amount of the postpetition payment obligation "changes over time, due to the adjustment of the interest rate, escrow account adjustments, **or the assessment of fees, expenses, or other charges,** notice of any change in payment amount needs to be conveyed to the debtor and trustee." *Id.* (emphasis added). This is so because "[t]imely notice of these changes will permit the debtor or trustee to challenge the validity of any such charges, if appropriate, and to adjust postpetition mortgage payments to cover any undisputed claimed adjustment." *Id.*

In some districts known as "conduit" districts, the chapter 13 trustee makes the ongoing, regular mortgage payments to mortgage servicers in addition to payments for the prepetition mortgage arrearages. In other districts known as "direct-pay" districts, debtors make the ongoing, regular mortgage payments directly to the mortgage servicers, and the chapter 13 trustee makes the payments for any prepetition mortgage arrearages. Either way, the procedure is a function of the confirmed chapter 13 plans and local rules and orders of the bankruptcy court. This Bankruptcy Court's chapter 13 caseload is "direct-pay" in all but a few cases where debtors have proposed that the trustee make the ongoing, regular mortgage payments. Thomas's confirmed plan required her to make direct payment of all her ongoing, regular mortgage payments to NRZ while the chapter 13 trustee disbursed the prepetition arrearages, along with the Court-ordered postpetition

arrearages. The differences between "conduit" and "direct-pay" procedures do not eliminate the need for information by debtors and trustees, and they do not relieve NRZ of its obligation in this case to provide notice of fees and charges under Rule 3002.1.

### The August 2022 Mortgage Statement

Thomas's Complaint references the August 2022 mortgage statement in support of her claim that NRZ assessed fees that were not disclosed pursuant to Rule 3002.1. [12] (AP Doc. 1 at ¶¶ 28-30.) That statement includes an itemization of fees and charges in two places: (1) the "Explanation of Payment Amount (Post-Petition Payment)" box ("Box 1") and the (2) "Past Payments Breakdown" box ("Box 2"). (AP Doc. 1 at 14.) For ease of reference, Box 1 is imaged here by way of example from the August 2022 statement.

| Explanation of Payment Amount (Post-Petition Payment) | |
|---|---|
| Principal | $129.16 |
| Interest | $192.93 |
| Escrow (Taxes and Insurance) | $235.85 |
| Regular Monthly Payment | $557.94 |
| Total Fees and Charges | $15.00 |
| Past Unpaid Amount | $610.90 |
| Total Payment Amount | $1,183.84 |

This payment amount does not include any amount that was past due before you filed for bankruptcy.

Box 2 is likewise imaged:

| Past Payments Breakdown | Paid Last Month | Paid Year to Date |
|---|---|---|
| Principal | $371.71 | $1,221.20 |
| Interest | $594.56 | $1,999.70 |
| Escrow | $332.91 | $1,063.15 |
| Fees/Late Charges | $15.00 | $143.48 |
| Partial Payment(Unapplied)* | -$46.80 | $5.16 |
| Total | $1,267.38 | $4,432.69 |

A $15.00 charge is indicated in "Box 1." *Id.* "Box 2" has a "Paid Last Month" column and a "Paid Year to Date" column; it also has line item for "Fees/Late Charges." *Id.* In the "Fees/Late Charges"

---

[12] The Court notes that, while the Complaint and this Opinion reference this mortgage statement as the August 2022 mortgage statement, the statement date is 7/18/2022 with a payment date of 8/01/2022. (AP. Doc. 1 at 14-15.)

line item, $15.00 is assessed as paid last month and $143.45 is assessed as paid year to date. *Id.* NRZ defends that it was not required to file a notice pursuant to Rule 3002.1 for any of these fees. (AP Doc. 64 at ¶¶ 37-39.)

As to the "Box 1" fee or charge for $15.00, NRZ asserts that the "$15 is not actually a payment but rather a reclassification of a $15 fee from borrower-responsible to servicer-responsible." (AP Doc. 64. at ¶ 37.) NRZ also asserts that the reclassification "event did not involve the Plaintiff's funds" – a no harm, no foul, line of defense. *Id.* For the "Box 2" "fees/late charges," NRZ denies that the remaining $128.48 ($148.48 less the $15.00 reclassified amount) are postpetition fees for which Rule 3002.1 notice is even required. Instead, NRZ maintains that these fees represent *prepetition* late fees and non-sufficient funds ("NSF") charges that were referenced in the original proof of claim. *Id.* at ¶¶ 38-39. Specifically, NRZ contends that the "remaining $128.48 of the $143.48 'Fees/Late Charges' paid year-to-date" consists of $96.60 in late fees and $31.88 in NSF charges that were incurred prepetition. *Id.* at ¶ 38. Thus, fees and late charges from 2016 were being paid in 2022; and, because they were prepetition, a Rule 3002.1 notice (which implicates postpetition activity only) was not required. (D. Ex. 6, pp. 1-14.)

To the extent this explanation adds up, it is not discernable from the mortgage statement itself. The mortgage statement includes a prepetition arrearage box but the fees and late charges are not referenced in that box; instead, they are included in the past payments breakdown of "Box 2" where there is no indication that they are prepetition. Even after a multi-day trial, with the benefit of extensive testimony from an NRZ corporate representative, this Court cannot — with any ease — deduce that these fees or late charges are, in fact, prepetition from the monthly statements. And the Court credits Thomas's testimony that she did not understand what any of these fees represented or how they impacted her obligations. Further, the Court can reasonably

22

infer that these fees and late charges exacerbated Thomas's frustration with her inability to get a straight answer from her mortgage company. In this regard, the Court views Thomas's challenge as one that Rule 3002.1 was implemented to address and intended to prevent.

### *Mortgage Statements Offered at Trial*

#### <u>Box 1 Fees and Charges</u>

In addition to the August 2022 statement, Thomas offered several mortgage statements at trial which also substantiate that fees and charges were assessed to her mortgage loan. The Court has reviewed those statements extensively. In doing so, the Court finds and concludes that postpetition fees and charges were assessed, but not noticed, pursuant Rule 3002.1(c). Importantly, these are the type of "Box 1" fees and charges which are designated on the mortgage statement as part of the postpetition payment. In addition to the "post-petition payment" designation, "Box 1" states: "This payment does not include any amount that was past due before you filed for bankruptcy." (P. Ex. 2, pp. 1 et seq.) As such, there is no "prepetition defense" that NRZ can rely upon in defending their failure to notice the postpetition fees, expenses, and charges that were being assessed against Thomas's account. Fifteen of the mortgage statements that Thomas offered at trial prove this point; they all include entries for fees and charges in Box 1 for postpetition payment. *Id.* Out of those fifteen statements, three statements include fees for "BPO/Aprsl Cost Disbursement." *Id.* Notably, those are the same type of postpetition fees that NRZ *did* disclose in March 2019, the only time a Rule 3002.1 notice was filed in Thomas's case. (BK13 Claims Register No. 13, March 13, 2019.)

Additionally, two statements include postpetition charges related to property inspections, and another statement assesses charges for attorney fees. (P. Ex. 2, pp. 1 et seq.) These are the kind of postpetition fees and charges that are commonly itemized in Rule 3002.1 notices; indeed, the

Advisory Committee Note to Rule 3002.1 offers "inspection fees, late charges, or attorney's fees" as examples of the types of postpetition fees that are noticed under the Rule. Moreover, the Rule 3002.1 notice form that NRZ filed in March 2019 includes both "attorney fees" and "property inspection fees" in its list of fee description options. (BK13 Claims Register No. 13, March 13, 2019.) In all, the "Box 1" postpetition charges from these fifteen statements total $1,556.00.

**Box 2 Fees and Charges**

A number of mortgage statements that Thomas offered at trial also have "fees/late charges" reflected in "Box 2" fees. As noted above, "Box 2" fees and charges are not specifically designated as postpetition, rather they are referenced in relation to the breakdown of past payments. At trial, Thomas offered nine statements that have "Box 2" fees or late charges indicated as being "paid last month." Those statements have corresponding transaction activity entries that are noted below:

| Mortgage Statement Date | Fees/Late Charges | Transaction Activity Date | Transaction Activity Description |
|---|---|---|---|
| 12/18/2018 | $255.00 | 11/23/2018 | Property inspection payment for $255.00 |
| 9/17/2019 | $90.00 | 9/13/2018 | Property inspection payment for $90.00 |
| 6/18/2020 | $1306.00 | 5/29/2020 | (1) BPO/Appraisal Cost payment for $215.00<br>(2) Motion for Relief payment for $1031.00<br>(3) Property Pres payment for $60.00 |
| 9/29/2020 | $308.61 | 9/16/2020 | FC Costs payment for $308.61 |
| 3/23/2021 | $141.51 | 3/16/2021 | (1) FC Costs payment for $74.34<br>(2) BPO/Aprsl Cost payment for $67.17 |
| 5/20/2021 | $283.02 | 5/17/2021 | BPO/Aprsl Cost payment for $283.02 |
| 2/16/2022 | $128.48 | 1/26/2022 | (1) Late charge payment for $96.60<br>(2) NSF fee payment for $31.88 |
| 11/17/2022 | $30.00 | 11/10/2022 | (1) property inspection waiver for $15.00<br>(2) property inspection waiver for $15.00 |

| | | | |
|---|---|---|---|
| 4/17/2023 | $80.00 | 4/13/2023 | (1) property inspection waiver for $15.00<br>(2) property inspection waiver for $15.00<br>(3) property inspection waiver for $20.00<br>(4) property inspection waiver for $15.00<br>(5) property inspection waiver for $15.00 |
| **Total "Box 2" Fees and Charges** | | | **$2,622.62** |

(P. Ex. 2, pp. 1 et seq.) None of these fees were noticed pursuant to Rule 3002.1(c).

The Court can reasonably infer that NRZ defends these 24 mortgage statements offered at trial consistent with its defense of the August 2022 statement. In that regard, the postpetition "Box 1" fees and charges were not noticed pursuant to Rule 3002.1(c) because they were reclassified and waived, and the "Box 2" fees and late charges were not noticed pursuant to Rule 3002.1(c) because they were prepetition. At trial, NRZ presented evidence that postpetition fees were waived within 180 days of the fees, expenses, or charges being incurred. For example, the defense established from the Loan History Summary that a $15.00 property inspection fee was assessed on July 8, 2022, was waived on November 10, 2022, and this occurred within 180 days of June 24, 2022, when the fee was incurred. (D. Ex. 46 at 28, 27, 29.) No credible evidence was offered at trial to dispute this evidence, and because the fees were waived within 180 days of being incurred, no Rule 3002.1(c) notice was required. While the Court agrees that notice of waived fees is not required by Rule 3002.1, it adopts a "use it or lose it" approach attributed to the *In re Peach* decision. *In re Rogers*, No. 25-80005, 2025 WL 2690177, at *4 n. 14 (Bankr. M.D.N.C. Sept. 19, 2025); *see In re Peach*, No. 21-30390, 2025 WL 930363 at *5 (Bankr. W.D.N.C. March 25, 2025). To that end, if NRZ assessed postpetition fees to Thomas's loan without providing notice under

25

Rule 3002.1(c), they waive the ability to collect them; indeed, they will live by their defense at trial.

As noted above regarding the August 2022 statement, evidence was also presented at trial establishing that the "Box 2" late charges and fees reflected payments for *prepetition* fees and charges, and therefore Rule 3002.1(c) notice was not required. No credible evidence was offered at trial to dispute NRZ's prepetition defense. Notwithstanding, there are concerns here that inform the Court's ultimate decision that Thomas be afforded some relief. To begin, the Court views certain federal regulations as inconsistent with the proposition that fees and late charges included in the "Box 2" past payments breakdown are prepetition. Those regulations, which implement the requirement that mortgage servicers provide periodic statements for residential mortgage loans, set forth what information the mortgage servicer must include in periodic statements. *See* 12 C.F.R. § 1026.41. When the consumer is in bankruptcy, however, the periodic statement requirement is modified. *In re Williams*, 2023 WL 6618956, at *3 (Bankr. E.D. Va. 2023). Requirements for the modified periodic statement are delineated in 12 C.F.R. § 1026.41 and, with respect to the transaction activity information that must be included on the periodic statement, the regulation provides: "The transaction activity information set forth in paragraph (d)(4) of this section must include all payments the servicer has received since the last statement, including all post-petition and pre-petition payments and **payments of post-petition fees and charges, and all post-petition fees and charges the servicer has imposed since the last statement**." 12 C.F.R. § 1026.41(f)(iv) (emphasis added). Because only postpetition fees and charges are contemplated as the "transaction activity information" that must be included on the periodic statement, it would be fair to assume that the payments listed in the transaction activity section of Thomas's mortgage statements are also for postpetition fees and charges. Regardless, attributing fees and charges paid in 2022 to

prepetition transactions that are nearly 6 years old underscores the confusion and difficulty for Thomas to determine her mortgage obligations and the status of her account. And in this Court's view, it is inconsistent with keeping the debtor informed under Rule 3002.1.

The Court credits Thomas's trial testimony as establishing that she never could get a straight answer from her mortgage company on what she owed and why she owed it. And NRZ's corporate representative did not explain the reason each charge was assessed against Thomas's account or offer proof that the task for each charge was actually performed by an NRZ employee or some third party. Frankly, this Court's extensive review of the evidentiary submissions in this case also yielded confusion more than clarity. Thus, it seems to frustrate the main purpose of Rule 3002.1—informing the debtor and the trustee of the exact amount of postpetition payment obligations where fees and charges are assessed during bankruptcy—if NRZ can reference those fees and charges as "paid last month" on postpetition mortgage statements and later defend them as prepetition to justify noncompliance with Rule 3002.1.

Thus, in addition to the August 2022 statement, the fifteen mortgage statements submitted by Thomas during trial substantiate that postpetition "Box 1" fees and charges were assessed against her mortgage account and should have been noticed pursuant to Rule 3002.1(c) — unless NRZ waived and reclassified them within 180 days. And nine mortgage statements also reflect "Box 2" fees and charges that have the appearance of postpetition fees (given the transaction activity dates reflected on the mortgage statements charted above), but NRZ has defended them as prepetition. Because none of these fees and charges were noticed, the Court is sensitive to the fact that Thomas likely faced one of the problems that Rule 3002.1 was intended to address, namely, a lack of information about the status of her mortgage loan. *See Culberson v. Nationwide Mortg., LLC. (In re Culberson),* Adv. No. 21-01012, 2022 WL 2111268, at *10 (Bankr. E.D. Tenn. June

10, 2022). Other courts have surmised, and this Court agrees, that NRZ was required to comply with Rule 3002.1 because, in mailing monthly mortgage statements that included the subject fees, it asserted that the fees were recoverable. *In re Peach*, 2025 WL 930363 at *5 (Bankr. W.D.N.C. March 25, 2025); *see also In re Owens,* No. 12–40716, 2014 WL 184781, *1 (Bankr. W.D.N.C. Jan. 15, 2014). Notwithstanding, for the fees and charges assessed prepetition, and for the postpetition fees and charges waived within 180 days of being incurred, as proved at trial, NRZ was not obligated to notice them under Rule 3002.1(c). Thus, to the extent punitive damages may be available as "other appropriate relief" under Rule 3002.1(i)(2), no such damages are warranted here in the absence of a violation. *Compare In re Gravel*, 6 F.4th 503, 517 (2d Cir. 2021) (concluding that punitive damage awards are beyond the scope of authority granted to bankruptcy courts in Rule 3002.1(i)(2), *with In re Dewitt*, 651 B.R. 215, 234 (Bankr. S.D. Ohio 2023) (concluding that "other appropriate relief" authorizes bankruptcy courts to award punitive damages for Rule 3002.1 violations).

From the evidence presented, the Court draws this conclusion about NRZ's procedure in the Thomas case. NRZ assessed numerous postpetition fees and charges against Thomas's account. When NRZ staff were unable to prepare and file the Rule 3002.1 notices timely (within 180 days of each assessment), it reversed those fees and charges on Thomas's account. The Court is unwilling to condone this approach or accept that such a procedure necessarily complies with the expectations of Rule 3002.1(c), but there is no evidence before the Court upon which to conclude that a Rule 3002.1(c) violation occurred.

NRZ argues that most of the subject mortgage statements contained bankruptcy disclaimers consistent with the *Roth* decision and NRZ wasn't really attempting to collect from Thomas. As indicated herein, the facts of this case are so confusing and the notices so convoluted that the Court

is not persuaded by this argument. The duty to disclose under Rule 3002.1 arose when the fees and charges were assessed, and there is nothing, without court direction, to prevent NRZ from maintaining those fees and charges as part of the lien on the Residence after Thomas's chapter 13 case is closed.

And as NRZ likely knows, binding precedent in this Circuit permits it to maintain, after discharge, all fees and charges against the Residence under NRZ's valid mortgage lien. "[A] secured creditor need not do anything during the course of the bankruptcy proceeding because it will always be able to look to the underlying collateral to satisfy its lien." *In re Bateman*, 331 F.3d 821, 827 (11th Cir. 2003) (quoting *In re Folendore*, 862 F.2d 1537, 1539 (11th Cir. 1989)). "Based on the terms of the mortgage and Alabama law, [mortgage creditor] had the substantive right to collect the full balance it lent to [debtor] as well as the right to hold its lien on the property as collateral until the debt had been paid." *In re Bozeman*, 57 F.4th 895, 915 (11th Cir. 2023).

For these reasons, the un-noticed, postpetition inspection fees, attorney's fees, and any other fees and charges that were assessed by NRZ to Thomas's mortgage loan will be permanently waived, disallowed, and ordered removed from her mortgage loan. NRZ has successfully defended that it did not violate Rule 3002.1(c) because it waived these postpetition fees, charges, and expenses within 180 days of them being incurred. NRZ will now be required to honor those waivers pursuant to this Court's authority and in fulfillment of Rule 3002.1 expectations.

### E. Count 4—Objection to Claim No. 13

Pursuant to § 502 of the Bankruptcy Code, "[a] claim or interest, proof of which is filed under section 501 ... is deemed allowed, unless a party in interest ... objects." 11 U.S.C. § 502(a). Under Bankruptcy Rule 3001, where the debtor is an individual and the claimant asserts a security interest in the debtor's principal residence, the claimant must also file with its proof of claim the

following documentation: (i) an itemized statement of the principal amount and any interest, fees, expenses, or other charges incurred before the petition was filed; (ii) the amount needed to cure any default as of the date the petition was filed; (iii) Official Form 410-A (a Mortgage Proof of Claim Attachment); and (iv) an escrow-account statement, prepared as of the date the petition was filed, that is consistent in form with applicable nonbankruptcy law. Fed. R. Bankr. P. 3001(c)(2)(A)-(C).

When a creditor files a proof of claim containing all the information required under Rule 3001, it "constitute[s] prima facie evidence of the validity and amount of the claim." Fed. R. Bankr.P. 3001(f). The burden then shifts to the objecting party to "'come forward with enough substantiations to overcome the claimant's prima facie case.'" *In re Walston*, 606 F. App'x 543, 546 (11th Cir. 2015) (citing *Benjamin v. Diamond (In re Mobile Steel Co.)*, 563 F.2d 692, 701 (5th Cir.1977) (quoting 3A *Collier on Bankruptcy* ¶ 63.06 (14th ed.1976)). As similarly noted by the court in *Zalloum*, "the burden shifts to the objecting party to make a good argument why the claim should not be allowed as filed:

> [T]he objecting party [must]...produce evidence at least equal in probative force to that offered by the proof of claim and which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency. This can be done by the objecting party producing specific and detailed allegations that place the claim into dispute, by the presentation of legal arguments based upon the contents of the claim and its supporting documents ... in which evidence is presented to bring the validity of the claim into question. If the objecting party meets these evidentiary requirements, then the burden of going forward with the evidence shifts back to the claimant to sustain its ultimate burden of persuasion to establish the validity and amount of the claim by a preponderance of the evidence.

*In re Zalloum*, No. 6:17-BK-02329-KSJ, 2019 WL 548545, at *2 (Bankr. M.D. Fla. Feb. 11, 2019) (citing *In re Armstrong*, 320 B.R. 97, 103 (Bankr. N.D. Tex. 2005) (internal quotation marks omitted) (citations omitted)).

NRZ filed its Amended Claim No. 13-3 on November 21, 2018, asserting a secured claim of $66,483.90 and prepetition arrearage of $8,448.55. This Amended Claim included: (1) Official Form 410-A Mortgage Proof of Claim Attachment; (2) an itemized statement of the amounts necessary to cure the default as of the petition date; (3) an Annual Escrow Amount Disclosure Statement, dated September 13, 2018; and (4) annexed copies of the recorded Mortgage,[13] the Adjustable Rate Rider, the Adjustable Rate Note, the 2012 Loan Modification Agreement, and three (3) recorded assignments. Amended Claim No. 13-3 included the documentation required by Bankruptcy Rule 3001, and it constituted prima facie evidence of the validity and amount of NRZ's claim. *In re Zalloum*, 2019 WL 548545 at *2. At that point, the burden shifted to Thomas to overcome NRZ's claim—which she has accomplished, in part.

Count 4 of the Complaint states "it appears that [Amended Claim No. 13-3] is not correct." Paragraphs 13 and 14 of the Complaint allege that [Amended Claim No. 13-3] "asserts a higher principal balance due than the [September 2018] monthly statement" and "the principal balance on [Thomas's] loan should be lower than those listed … in the claim." (AP Doc. 1, ¶¶ 13-14.) Paragraph 15 alleges escrow inaccuracies "because the [September 2018 mortgage statement] reflects more than $2,000 is due in escrow payments, but the escrow history attached to [Amended

---

[13] During trial, Thomas testified that she signed a mortgage and a general warranty deed on June 1, 2006, that contained different language from the documents recorded with the Probate Court of Jefferson County, Alabama, on June 2, 2006. She believes the mortgage and deed were altered or modified to her detriment. She also contends that her former attorney, Keller, misplaced or kept the original mortgage and deed containing her "wet ink" signatures, and that the deed granted her a life estate in the Residence. The Court does not find this testimony to be reliable, and finds the mortgage admitted into evidence by Thomas (P. Ex. 1, pp. 381-395) to be an accurate representation of the mortgage recorded with the Probate Court nearly 20 years ago as a valid lien on the Residence. The Court also finds the general warranty deed for the Residence dated June 1, 2006, which was admitted into evidence by Thomas (P. Ex. 1, p. 307), to be valid.

31

Claim No. 13-3] only reflects … $550.50 is due."[14] (AP Doc. 1, ¶ 15.) A portion of Paragraph 16 of the Complaint reads "the accrued interest claimed as part of [Amended Claim 13-3] appears to be incorrect" because "payments made by [Thomas] were placed in suspense and not applied to her loan until much later in time … causing the principal balance to remain artificially high." (AP Doc. 1, ¶ 16.)

With regard to the principal balance discrepancy, NRZ argues the difference between the principal balance reflected in Amended Claim No. 13-3 ($60,134.19) and the outstanding principal balance reflected in the September 2018 mortgage statement ($53,247.70) was the deferred amount of $6,886.49 based on the two loan modifications executed by Thomas in 2010 and 2012, before NRZ began servicing her mortgage loan.

As it relates to the escrow discrepancy, NRZ explains that the escrow balance listed on the September 2018 mortgage statement was caused by missed monthly payments. NRZ further asserts that the escrow deficiency itemized in Amended Claim No. 13-3 correctly reflects Thomas's escrow account balance as of the chapter 13 petition date ($550.50). (D. Ex. 6, pp. 13-14.) NRZ further claims that there is no direct correlation between the two escrow numbers that would render Amended Claim No. 13-3 inaccurate.

Regarding the accrual of interest, NRZ states that Thomas's mortgage loan is a "fully amortized" loan rather than a "simple interest" loan, so it does not incur additional interest when a payment default occurs and partial payments are placed in a suspense account instead of being applied to her mortgage account. NRZ maintains that these steps are within their rights under the

---

[14] Based on the cross-examination of Thomas during trial, Thomas's former counsel acknowledged that this allegation was a clerical error during Thomas's deposition on June 12, 2024. Therefore, the Court will not address this allegation any further.

mortgage, and they do not cause any additional interest to accrue on the unpaid balance of Thomas's mortgage loan.

Regarding Thomas's claim in Paragraph 17 of the Complaint about the inaccuracy of the deferred balance, the Court is not persuaded that her claims are correct. The Court therefore finds in favor of NRZ that the amount of $6,886.49 correctly reflects the balance deferred to the end of Thomas's mortgage loan as a result of her 2010 and 2012 loan modifications, before NRZ began servicing her mortgage loan.

With regard to Thomas's claim in Paragraph 34 of the Complaint that interest has continued to accrue postpetition because her mortgage payments were not applied timely, the Court is not persuaded and finds in favor of NRZ. Its witness, Gill, established that Thomas's loan is a "fully amortized" loan rather than a "simple interest" loan and, while Thomas may incur late fees or penalties for making partial payments, additional interest does not accrue on the unpaid principal balance of the loan when partial payments are held in suspense by NRZ. The amortization schedule reflects the schedule of monthly mortgage payments and interest due throughout the term of this mortgage loan.[15] (D. Ex. 23.) With the expectation of regular monthly payments, the amortization schedule reflects that a smaller portion of each timely payment is applied to interest as the principal balance of the loan is paid down monthly. *Id.* Thomas has shown no evidence to indicate a different pattern for her mortgage loan, and the Court rules in favor of NRZ here.

Regarding Thomas's claim in Paragraphs 12, 16, 55, and 56, of the Complaint that the accrued interest listed in Amended Claim No. 13-3 was incorrect, the Court finds that Thomas has

---

[15] During her trial testimony, Thomas claimed that she never received a loan amortization from NRZ. However, a copy was attached to NRZ's Motion for Summary Judgment (AP Doc. 64, Ex. A, pp. 108-118). In addition, the documents that Thomas introduced as evidence included two copies of the same amortization. (P. Ex. 2, pp. 461-471, 485-495.)

33

met her burden. Despite multiple reviews of NRZ's trial testimony and the documents attached to Amended Claim No. 13-3, the Court has been unable to reconcile the numbers for the prepetition interest due. Accordingly, this portion of Amended Claim No. 13-3 ($3,368.33) will be disallowed.

On Thomas's claim in Paragraphs 12, 55, and 56, of the Complaint that Amended Claim No. 13-3 included incorrect amounts for fees and costs charged to Thomas's mortgage account, the Court finds that Thomas has met her burden. Despite multiple reviews of NRZ's trial testimony and documents relevant to this issue, the Court has been unable to reconcile the numbers for the prepetition fees and costs due. Accordingly, this portion of Amended Claim No. 13-3 ($2,784.72) will be disallowed in favor of Thomas.

With regard to Thomas's claim in Paragraph 15 of the Complaint that the prepetition escrow deficiency listed in Amended Claim No. 13-3 was incorrect, the Court finds that this allegation was a clerical error and therefore no relief is due.

To summarize, based on the lack of clarity in the evidence provided by NRZ, the Court sustains Thomas's objection in part and determines under 11 U.S.C. § 502(b)(1) that Amended Claim No. 13-3 should be reduced to the extent it is unenforceable against Thomas under the Mortgage. The prepetition accrued interest ($3,368.33), and fees and costs ($2,784.72), included in Amended Claim No. 13-3 will be disallowed. The remaining grounds for Thomas's objection to Claim No. 13 in Count 4 of the Complaint are overruled.

**F.     Count 5—Objection of Claim No. 16**

Thomas has also objected to Claim No. 16, requesting that the claim be disallowed. This Court's Order of September 5, 2019, conditionally denied NRZ's Motion for Relief, required Thomas to resume regular mortgage payments, and authorized NRZ to file a proof of claim for the postpetition default in payments. (D. Ex. 11.) NRZ filed Claim No. 16 for the postpetition arrears

in the amount of $3,345.04. Thereafter, Thomas filed an objection to Claim No. 16 on April 4, 2020, citing a lack of credit toward her mortgage account for the escrow payments and the extra payments that she had made. This Court sustained Thomas's objection on May 22, 2020, and reduced Claim No. 16 to $2,451.87. (D. Ex. 14.) Notably, Thomas filed her Complaint more than two years after the Court sustained her first objection and reduced Claim No. 16. The Court agrees with NRZ on this point, and determines that Count 5 of the Complaint is barred on the basis of res judicata.

"*Res judicata* acts as a bar 'not only to the precise legal theory presented in the previous litigation, but to all legal theories and claims arising out of the same operative nucleus of fact.'" *Maldonado v. U.S. Atty. Gen.*, 664 F.3d 1369, 1376 (11th Cir. 2011) (citing *Pleming v. Universal–Rundle Corp.*, 142 F.3d 1354, 1356 (11th Cir.1998)). As previously addressed by this Court, "[u]nder Alabama law, [t]wo causes of action are the same for *res judicata* purposes when the following four elements are satisfied: '(1) a prior judgment on the merits, (2) rendered by a court of competent jurisdiction, (3) with substantial identity of the parties, and (4) with the same cause of action presented in both actions.'" *Matter of CrossPlex Vill. QALICB, LLC*, No. 20-02586-DSC, 2021 WL 886377, at *6 (Bankr. N.D. Ala. Mar. 9, 2021) (citing *Chapman Nursing Home, Inc. v. McDonald*, 985 So.2d 914, 919 (Ala. 2007)).

To logically determine whether res judicata bars Count 5 of the Complaint, this Court's evaluation need go no further than its Order of May 22, 2020. The Order sustaining the first objection to Claim No. 16 is a prior judgment rendered by this Court involving the same parties regarding the same claim. Accordingly, Thomas does not prevail on Count 5 of the Complaint because this Court has already sustained her objection and reduced the claim to $2,451.87. Accordingly, relief is due to be denied under Count 5, Thomas's objection to claim is overruled,

and Claim No. 16 is allowed consistent with this Court's prior Order. (D. Ex. 14.) As an aside, the testimony and records submitted by NRZ show that disbursements from the chapter 13 trustee have already satisfied the allowed balance of Claim No. 16.

## G.    Count 6—Attorney's Fees

Thomas seeks attorney's fees for retaining counsel "as a result of the Defendant's actions herein" under 11 U.S.C. § 105(a), Bankruptcy Rule 3002.1(i), and 12 U.S.C. § 2605(e). There are no attorney's fees to be awarded to Thomas in this case because she is no longer represented by counsel, and she has handled her case pro se for more than 18 months. *In re Davis*, 201 B.R. 835, 837 (Bankr. S.D. Ala. 1996). A pro se litigant is not entitled to collect fees payable to an attorney for legal work because [she] is not an attorney. *In re Vazquez*, 221 B.R. 222, 229 (Bankr. N.D. Ill. 1998) (citing *Pansier v. State of Wisconsin Dept. of Revenue (In re Pansier)*, 208 B.R. 41, 46 (Bankr. E.D.Wis.1997)) (pro se litigant denied attorney's fees in contempt action for violation of discharge order). In view of Thomas's status as a pro se litigant, the Court declines to assess an award of attorney's fees for her benefit.

NRZ argued at trial that each party must bear its own costs in this litigation. "Our basic point of reference when considering the award of attorney's fees is the bedrock principle known as the American Rule: Each litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise." *Baker Botts, LLP v. ASARCO, LLC*, 576 U.S. 121, 126, (2015) (quoting *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 252–253, 130 S.Ct. 2149, 176 L.Ed.2d 998 (2010) (internal quotation marks omitted)). NRZ asked this Court to apply the American Rule to Thomas. And it will. However, based on its authority under 11 U.S.C. § 105(a), the Court will also apply the American Rule to NRZ, with the intent of reaching an equitable result that will conclude this long-running, contentious dispute between the parties. Accordingly, NRZ

will be enjoined from charging its legal fees for this case against Thomas or the lien on her Residence.

## H.     Additional Claims Raised by Thomas During Trial

During the course of her trial testimony, Thomas raised several new claims which were not pleaded in her Complaint against NRZ or its counsel. She also made similar claims against her former counsel, Keller. The claims were broad, and included allegations of forgery, conspiracy, document alteration, the withholding and destruction of evidence, the wrongful repossession of her vehicle, contacting officials at her children's school, interfering with her employment, and manipulating her computer and her email. While this Court sympathizes with Ms. Thomas for the extremely difficult struggles she has faced and the obstacles she has overcome, there is no credible evidence before the Court that proves any of these allegations against NRZ, its counsel, or Keller, or that makes the allegations relevant to the Complaint.

In addition, the Eleventh Circuit has stated that "a plaintiff may not raise a new theory of liability based on unpleaded factual predicates in support of an already pleaded claim." *Dukes v. Deaton*, 852 F.3d 1035, 1046 (11th Cir. 2017). "Additionally, '[a] plaintiff may not amend her complaint through argument in a brief opposing summary judgment.'" *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004). Based upon this controlling authority, these additional claims are denied as moot. Thomas has established no liability for the accused parties, and she is therefore not entitled to recover damages for these additional claims.

## I.     Effect of Discharges

Thomas obtained a chapter 7 discharge in 2008 (BK7 Doc. 83) and she did not reaffirm the mortgage debt with NRZ. Therefore, Thomas has no *personal* liability to repay any amount claimed by NRZ. In addition, this Court recently granted a hardship discharge to Thomas under 11

U.S.C. § 1328(b), subject to her completion of several certifications required by the Bankruptcy Code. (BK13 Docs. 245, 249, 249-2.) This hardship discharge further supports the premise that Thomas has no *personal* liability to repay NRZ. She may simply vacate the Residence, surrender it to NRZ, and be free from owing any debt to NRZ. However, by virtue of its recorded mortgage, NRZ continues to hold a valid lien on the Residence. This is known as *in rem* liability and it means that, if Thomas decides to stay and keep her Residence, she must continue making regular mortgage payments to NRZ every month, and she must repay the amounts ordered by this Court and required under the Mortgage and her 2012 loan modification. *See In re Bateman*, 331 F.3d at 827 (11th Cir. 2003) and *In re Bozeman*, 57 F.4th at 915 (11th Cir. 2023).

**J.    Conclusions and Relief Awarded**

1. Relief is DENIED under Count 1 of the Complaint for alleged breach of contract. Damages are not available to Thomas to address the allegations about NRZ's handling of her escrow payments and the missing 2021 escrow analysis.

2. Relief is DENIED under Count 2 of the Complaint for alleged violations of the automatic stay.

3. Relief is DENIED under Count 3 of the Complaint. Although NRZ did not provide notice of the postpetition fees, expenses, and charges asserted against Thomas's mortgage account, NRZ mitigated the harm to Thomas by waiving all fees and expenses and crediting them back to Thomas's account within 180 days of assessment, in technical compliance with Rule 3002.1(c). However, in light of this fee waiver, NRZ must live by its trial defense, even after Thomas's chapter 13 case is closed.

a. As to un-noticed, postpetition fees, expenses, and charges, including those contained in each of the 15 postpetition, monthly mortgage statements issued to Thomas ($1,556.00), NRZ is

enjoined from collecting these amounts from Thomas or the lien on her Residence. As to any un-noticed, postpetition fees, expenses, or charges that have been assessed to Thomas's mortgage loan but not already waived or reclassified, NRZ has waived the ability to collect them under Rule 3002.1 and is enjoined from collecting them at any future date;

b. Of the $7,423.67 in fees, expenses, and charges advanced by NRZ to service Thomas's mortgage account (P. Ex. 1, pp. 298-306), the Court applies its authority under 11 U.S.C. § 105(a) and enjoins NRZ from collecting the amounts advanced postpetition, $5,016.03, from Thomas or the lien on her Residence.

4. Relief is GRANTED in part, under Count 4 of the Complaint, and Thomas's Objection to Amended Claim No. 13-3 is SUSTAINED in part. The Court determines under 11 U.S.C. § 502(b)(1) that Amended Claim No. 13-3 is due to be reduced to the extent unenforceable against Thomas under the mortgage. The prepetition accrued interest of $3,368.33 and the prepetition fees and costs of $2,784.72 are disallowed. Therefore, Amended Claim No. 13-3 is reduced and allowed for $60,330.82. Because the interest, fees, and costs were part of the principal balance of Amended Claim No. 13-3 and were not disbursed by the chapter 13 trustee as arrearages under the confirmed plan, the amounts totaling $6,153.05 will be deducted from the remaining balance due on the Mortgage for the Residence.

5. Relief is DENIED under Count 5 of the Complaint. Thomas's Objection to Claim No. 16 is OVERRULED and this claim is allowed as filed.

6. Relief is DENIED under Count 6 of the Complaint, and Thomas's request for attorney's fees is DENIED. However, the Court finds that the American Rule under *Baker Botts, LLP v. ASARCO, LLC*, applies to both parties in this case, and the Court applies its authority under 11

U.S.C. § 105(a) to enjoin NRZ from collecting its legal fees incurred in this case from Thomas or the lien on her Residence.

7. Thomas's objection to NRZ's Payment Change Notice dated June 8, 2022 (AP doc. 1, ¶ 24), is SUSTAINED in part and OVERRULED in part, and her Motion to Determine Validity of Mortgage Payment Change (BK13 Doc. 109), which was incorporated in the Complaint, is GRANTED in part and DENIED in part.

Any escrow shortages that have accrued between October 1, 2021 (when the 2020 escrow analysis lapsed) to the date of this Opinion are hereby waived. See *In re Garza*, 2012 WL 4738651 *3 (Bankr. S.D. Tex. October 1, 2012) and *Chase Manhattan Mortgage Corp. v. Padgett*, 268 B.R. 309 (S.D. Fla. 2001). NRZ is enjoined from collecting said escrow shortages from Thomas or the lien on her Residence. The escrow payments required if Thomas does not vacate and surrender the Residence are discussed *infra*.

8. Because Thomas received a chapter 7 discharge—without reaffirmation of the debt to NRZ—and a chapter 13 hardship discharge (subject to filing certain certifications required under the Bankruptcy Code), she has no *personal* liability for any debts claimed by NRZ. She may vacate and surrender the Residence to receive the fresh start available under the discharge provisions of the Bankruptcy Code. If, however, Thomas decides not to vacate and surrender the Residence, she must continue to make the payments required by this Opinion beginning April 1, 2026. If Thomas defaults on any amount or obligation due on or after April 1, 2026, then NRZ may pursue its contractual rights under nonbankruptcy law and the Mortgage, which continues to be a valid lien on the Residence.

9. So that both parties may move forward with a concise statement of their rights and obligations (*see* fn. 8, p. 8), the Court determines that, as of the date of this judgment:

a. The balance of the Mortgage is $53,133.04 ($64,302.12 (D. Ex. 22, NRZ payoff statement) less $5,016.03 in postpetition corporate advances and $6,153.05 in prepetition accrued interest, fees, and costs);

b. The per diem interest due is $2,260.98 ($7.11 x 318 days per the NRZ payoff statement (D. Ex.22), from April 23, 2025, the initial trial date (AP. Doc.74), to the date of this Opinion;

c. The total payoff balance is $55,394.02 (balance plus accrued interest);

d. The annual interest rate is 5% and the loan maturity date is June 1, 2042, per the 2012 loan modification (D. Ex. 5). 11 U.S.C. § 1322(b)(2) prohibits this Court from modifying NRZ's rights as a claimholder whose claim is secured only by a security interest in real property that is Thomas's principal residence.

e. The principal and interest payment due is $416.88 monthly beginning April 1, 2026, for 194 months;

f. If Thomas does not vacate and surrender the Residence, the required monthly escrow payment shall be determined by the most recent escrow analysis performed by NRZ, which NRZ must provide to Thomas within 21 days of the entry of this Opinion;

g. If Thomas does not vacate and surrender the Residence, she must maintain an appropriate homeowner's insurance policy to protect NRZ's interest in the Residence, and provide proof of the same within 21 days of the entry of this Opinion. She must also escrow homeowner's insurance premiums and all ad valorem property taxes due on the Residence for 2026 and subsequent years, as required in Section 3 of the Mortgage.

10. The objection by NRZ to the admission of Thomas's exhibits in support of her trial testimony is OVERRULED based on her status as a pro se litigant.

41

11. All other relief requested in the Complaint that has not been expressly addressed in this Opinion is hereby DENIED, with the costs taxed as paid.

12. As required under Rule 7058 of the Federal Rules of Bankruptcy Procedure, the Court will enter a separate Judgment consistent with this Memorandum Opinion.

Dated: March 6, 2026.

/s/ D. Sims Crawford
D. SIMS CRAWFORD
United States Bankruptcy Judge
